668 P.2d 300

John D. CAIN, Norma J. Cain, Gene
Holmes and Geraldine O. Holmes,
Plaintiffs-Appellees,

v.

Joseph F. POWERS and Genovieve Eagle
Powers, husband and wife,
Defendants-Appellants.

No. 14754.

Supreme Court of New Mexico.

June 24, 1983.

C. Clement Koogler, Aztec, for plaintiffs-appellees.

Andrew L. Cameron, Armijo, Baggett &
Cameron, P.C., Farmington, for defendants-appellants.

## OPINION

FEDERICI, Justice.

Plaintiffs-appellees (plaintiffs) John Cain, Norma Cain, Gene Holmes and Geraldine Holmes, brought suit to enforce a restrictive covenant in a real estate instrument which prohibited the placing of a trailer house on a parcel of realty they had sold to the defendants-appellants (defendants) Joseph Powers and Genovieve Powers. Defendants placed a mobile home on the realty in question but maintain that the mobile home was not specifically prohibited by the restrictive covenant. At the trial on November 9, 1982, plaintiffs' counsel and one of the plaintiffs were present, and defendants' counsel was present, although neither defendant appeared. Defendants' counsel was unable to explain the nonappearance of the defendants, or to locate them, and he subsequently made a motion for a continuance. The motion for a continuance, without explanation for the unavailability of the defendants, was denied. Judgment was entered for plaintiffs on November 29, 1982, enforcing the restrictive covenant. Defendants filed a timely appeal. We affirm.

The issues on appeal are:

I. Whether the trial court abused its discretion in denying the defendants' motion for a continuance.

II. Whether the restrictive covenant language prohibits the defendants from placing a mobile home on the subject property.

### I. Continuance.

The record shows that a certificate of readiness was filed in this case, and that a notice of hearing was mailed to defendants' counsel sixty-two days prior to the hearing. Defendants' counsel received notice of trial sixty days before the date of trial. On the trial date, defendants' counsel was present but neither of the defendants was present. Defendants' counsel was unable to explain to the court the nonappearance of defendants nor, given additional time by the trial court to attempt to locate defendants, was defendants' counsel able to find the defendants or provide the court with an answer as to their whereabouts. At this point in the proceedings, defendants' counsel made a motion for a continuance based upon the nonappearance of his clients. Defendants maintain that the trial court erred in not granting the motion for a continuance. We disagree.

This Court has consistently held that the granting or denying of a continuance is a matter within the sound discretion of the trial court and it will not be reviewed on appeal except where plain abuse is demonstrated. *New Mexico Feeding Co., Inc. v. Keck,* 95 N.M. 615, 624 P.2d 1012 (1981); *Schmider v. Sapir,* 82 N.M. 355, 482 P.2d 58 (1971); *Garrison v. Navajo Freight Lines, Inc.,* 74 N.M. 238, 392 P.2d 580 (1964). Under circumstances such as these, where defendants' counsel could not locate the defendants and had no explanation for their nonappearance, the trial court did not plainly abuse its discretion in denying the motion for a continuance. *New Mexico Feeding Co., Inc. v. Keck.*

Additionally, defendants now claim that they never received notice of the trial date, which accounts for their unavailability on the date of the trial, and that if the contin-

uance had been granted, no prejudice would have been suffered by the plaintiffs by a delay in the proceedings. This issue was not raised below and it is well settled that issues raised for the first time on appeal will not be considered by this Court. NMSA 1978, Civ.App.R. 11. *G.M. Shupe, Inc. v. Bureau of Revenue,* 89 N.M. 265, 550 P.2d 277 (Ct.App.), *cert. denied,* 89 N.M. 321, 551 P.2d 1368 (1976); *Neece v. Kantu,* 84 N.M. 700, 507 P.2d 447 (Ct.App.), *cert. denied,* 84 N.M. 696, 507 P.2d 443 (1973).

### II. Restrictive Covenant.

Defendants rely on *Heath v. Parker,* 93 N.M. 680, 604 P.2d 818 (1980), for the proposition that a mobile home is not prohibited by the language in the restrictive covenant covered in this case. We disagree.

Ostensibly, *Heath* is the controlling case regarding the narrow issue here. That is, whether a mobile home is a prohibited structure within the meaning of the drafted language of the restrictive covenant. In *Heath,* this Court was called upon to determine whether the word "trailer," without further definition or qualification, used in a restrictive covenant supported the contentions of lot owners who had sought to restrict a party from placing a double-wide mobile home in the subdivision. We reversed the trial court. We held that a double-wide mobile home was substantially the same as a conventional one-family dwelling and that the placing of a mobile home on the lots in that case did not violate the letter or spirit of the restrictive covenant. *Heath,* however, is necessarily limited to the facts present in that case. The restrictive covenant only spoke in general terms of prohibiting a "trailer" from being placed on the lots. The dedicating instrument did not seek to distinguish the difference between a "trailer," a house trailer, a mobile home or a horse trailer, a truck-trailer, or any other possible permutation of the word "trailer" that could have been contemplated. Absent some clarity in that case, we declined to enforce a blanket restrictive covenant against the defendants.

In the restrictive covenant in this case, however, specificity was used to control the use and appearance of the area in which the mobile home was placed and for a definite period of time. The relevant portions of the restrictive covenant provide:

1. No trailer houses or modular homes shall be allowed on the premises, except that grantees and they alone, may place a trailer house or modular home on the premises for a period not to exceed three (3) years from the date hereof.

2. The premises shall be used for residential and agricultural purposes only; no more than two residences shall be erected on the premises, and they shall be of substantial construction; no homes shall be moved upon the premises.

To determine whether a restrictive covenant in any given case will be enforced as it speaks, we are guided by certain general rules of construction. First, when the language of a restrictive covenant is unclear or is subject to ambiguity, then the covenant will be resolved in favor of the free enjoyment of the property and against the restriction. *Heath v. Parker, supra.* Second, restrictions on land use will not be read into covenants by implication lest the free alienability of property be frustrated. *Hannula v. Hacienda Homes,* 34 Cal.2d 442, 211 P.2d 302 (1949). Third, restrictive covenants must be considered reasonably, though strictly, so that "illogical, unnatural or strained construction" will not be effected. *Hyder v. Brenton,* 93 N.M. 378, 381, 600 P.2d 830, 833 (1979). And, fourth, words in a restrictive covenant must be given their ordinary and intended meaning. *Riley v. Stoves,* 22 Ariz.App. 223, 526 P.2d 747 (1974).

Here, the defendants attempt to create a meaningful difference between the term "mobile home," which they contend is not covered by the restrictive covenant, and the term "trailer houses," which appears in the restrictive covenant. We find this to be a distinction without substance or conviction. The term "mobile home" would generally be understood in its usual meaning to refer to a "trailer house." *Lassiter v. Bliss,*

559 S.W.2d 353 (Tex.1978). The record shows that the structure placed on the subject property is approximately ten feet wide and is well in excess of forty feet in length and is designed for residential habitation. Applying the aforementioned rules of construction, to give credence to a contrary meaning would only serve to defeat the clear intention of the drafter who sought to restrict a trailer house, or mobile home, from being placed on the property. *See Carter v. Conroy,* 25 Ariz.App. 434, 544 P.2d 258 (1976); *Jones v. Beiber,* 251 Iowa 969, 103 N.W.2d 364 (1960); *Timmerman v. Gabriel,* 155 Mont. 294, 470 P.2d 528 (1970); *Brasher v. Grove,* 551 S.W.2d 302 (Mo.Ct. App.1977); *McBride v. Behrman,* 28 Ohio Misc. 47, 272 N.E.2d 181 (1971); *Smith v. Bowers,* 463 S.W.2d 222 (Tex.Civ.App.1970).

A majority of foreign jurisdictions faced with the identical issue has decided that where the restrictive covenant was clearly intended to prohibit a trailer home from being placed on a parcel of realty, the restrictive covenant will be enforced despite the protestations of a party that the trailer home is a mobile home. *Lassiter v. Bliss, supra.* Generally, for example, it is stated at Annot., 96 A.L.R.2d 232 § 1 (1964), that "[t]he term 'trailer' is understood in its usual meaning regardless of whether it is referred to or described as house trailer, mobile home, trailer coach, or some such term." This proposition is illustrated by *Bullock v. Kattner,* 502 S.W.2d 828 (Tex. Civ.App.1973), where the defendant conceded that while he had placed a "mobile home" on his lot in a subdivision in Travis County, Texas, nonetheless the restrictive covenant seeking to prohibit a "trailer" and other structures from being placed on the residential lots did not include "mobile homes" within the meaning of the restriction. The Texas Court of Appeals rejected that notion and held that the purpose of the restrictive covenant was plain. Accordingly, a trailer is still prohibited by a restrictive covenant, even though the trailer may also be referred to as a mobile home. Similarly, in *Timmerman v. Gabriel, supra,* the Montana Supreme Court pointed out that a

restrictive covenant was likewise enforceable, notwithstanding the defendants' attempts to characterize a trailer home as a mobile home. The court observed that "[t]he term mobile home is an advertising euphemism for a large house trailer and although the larger models of mobile homes are considerably less mobile than the smaller models, they are essentially similar in structure and appearance." *Id.* 470 P.2d at 530. And, in *Van Poole v. Messer,* 19 N.C. App. 70, 198 S.E.2d 106 (1973), the North Carolina Court of Appeals affirmed the judgment of the trial court that the term "trailer" was also inclusive of the term "mobile home," further commenting that this synonymous definition of the term was the accepted rule in every authority that they had located. Indeed, in the case at bar, the expert testimony adduced at trial from a former owner of a house trailer business confirmed that the terms "mobile home" or "house trailer" are in fact used interchangeably in that industry.

The intent of the restrictive covenant here was clear. The plaintiffs sought to prohibit "trailer houses" from being placed on the property sold to the defendants and for a definite period of time. No trailer house is to be used as a residence. A mobile home is a trailer house and is therefore excluded by the restriction. To the extent *Heath v. Parker, supra,* may be read to be inconsistent with this opinion, it is hereby expressly overruled.

IT IS SO ORDERED.

DAN SOSA, Jr., Senior Justice, and STOWERS, J., concur.